UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORA J. RUSHFORD-SPINK,

                     Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.
_____

**REPORT AND
RECOMMENDATION**

08-CV-827
(GLS/VEB)

## I. INTRODUCTION

In February of 2005, Plaintiff Lora Rushford-Spink filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since October 1, 2004, due to various physical ailments and a mood disorder. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through her attorney, Peter M. Margolius, Esq., commenced this action on July 30, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On August 24, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  In February of 2005, Plaintiff applied for SSI benefits, alleging that she had been unable to work since October 1, 2004. (T[1] at 15, 232).  The Commissioner initially denied the application on August 3, 2005. (T at 15, 33).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ")on October 14, 2005. (T at 31).  On June 7, 2007, Plaintiff, represented by counsel, appeared and testified before ALJ Robin Arzt in Albany, New York.  (T at 227).

On September 27, 2007, the ALJ issued a written decision denying Plaintiff's applications for benefits.  (T at 15-24).  The ALJ's decision became the Commissioner's final decision on May 30, 2008, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 3-6).

Plaintiff commenced this action by filing a Complaint on July 30, 2008. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on December 29, 2008. (Docket No. 9).  The Commissioner filed a Brief in opposition on February 12, 2009. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, the Court recommends that the Commissioner's motion for judgment on the pleadings be granted.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 25, 2005, the application date. (T at 17).  The ALJ found that Plaintiff had the following impairments: a lower back disorder, migraine headaches, and a mood disorder, considered "severe" under the applicable Social Security Act Regulations (the "Regulations").   (T at 17).  The ALJ found that Plaintiff's subjective complaints of bilateral knee disorder and bilateral elbow disorder were not medically determinable impairments. (T at 17).  The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations. (T at 17).

After reviewing the medical evidence, the ALJ concluded that Plaintiff "has the residual functional capacity to occasionally lift and carry up to ten pounds at a time, walk and stand up to two hours out of an eight hour work day, sit up to six hours out of an eight hour work day."  (T at 17).  In addition, the ALJ determined that Plaintiff can "occasionally

5

push and pull light weight objects, and occasionally bend and stoop." (T at 17).   The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work.  (T at 17).  Further, the ALJ found that Plaintiff is able to "understand, remember and carry out simple instructions, make judgments that are commensurate with the functions of unskilled work." (T at 18).

The ALJ concluded that Plaintiff is unable to perform her past relevant work as a cashier because of her inability to stand on her feet for a full work day.  (T at 23).  However, the ALJ found that Plaintiff, based on her residual functional capacity, age, education (high school equivalency), and work experience, can perform jobs that exist in significant numbers in the national economy.  (T at 23).  Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 23).

As noted above, the ALJ's decision became the Commissioner's final decision on May 30, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

## 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  She offers four (4) principal arguments in support of her claim.  First, Plaintiff contends that, when evaluating Plaintiff's psychiatric impairment, the ALJ substituted her medical judgment for that of Plaintiff's treating providers.   Second, Plaintiff argues that the ALJ's residual functional capacity assessment was flawed.  Third, Plaintiff asserts that the ALJ did not give proper consideration to the impact of Plaintiff's morbid obesity on her ability to perform work.  Lastly, Plaintiff contends that the ALJ improperly discounted the opinion of her treating primary care provider, Amy Murray a physician's assistant.  Each argument will be

6

addressed in turn.

### a.   Evaluation of Psychiatric Impairment

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  At the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal the listed impairments.

In this case, Plaintiff contends that her mood disorder is severe and that her mental impairments meet or medically equal the criteria for the impairment contained in § 12.04 of the Listings (Affective Disorders).  The ALJ agreed that Plaintiff's mood disorder constitutes a "severe" limitation.  However, the ALJ further found that Plaintiff's mental impairment did not meet or medically equal any of the listed impairments.

Plaintiff challenges this determination.   In particular, she points to the Medical Source Statement completed by Davi Osgood, her treating mental health specialist and a licensed master social worker ("LMSW").   Osgood opined that Plaintiff has "moderate" limitations with regard to her ability to carry out simple instructions, make judgments on simple work-related decisions, carry out complex instructions, and make judgments on complex work-related decisions. (T at 168).  Osgood further noted that Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, and respond to changes in a routine work setting, were affected by the impairment. (T at 169).  Osgood specifically noted "marked" limitations as to these skills.  (T at 169).

Plaintiff also points to a core psychiatric evaluation, dated March 20, 2006, which indicated that Plaintiff had a Global Assessment Functioning ("GAF") score of 55. (T at 174).   Such a score indicates a moderate level of impairment. See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed.2000) (listing scores from 51 through 60 as indicating "moderate symptoms (*e.g.* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, no friends, conflicts with peers or co-workers)").

Plaintiff cites the consultative examination report prepared by Dr. Annette Payne, a psychologist.  Dr. Payne found that Plaintiff's attention, concentration, and memory skills (both recent and remote) were "[m]ildly impaired." (T at 124).   In general, Dr. Payne's assessment was that Plaintiff's psychiatric difficulties were "moderately limiting." (T at 125).

In addition, Plaintiff relies upon the Mental Residual Functional Capacity Assessment completed by State Agency Review doctor Teena Guenther, in which Dr. Guenther opined that Plaintiff was moderately limited with regard to her ability to carry out detailed

instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. (T at 133-34).

To establish that her impairments meet or equal § 12.04, Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions. This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) of § 12.04 to determine whether her "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

In this case, the ALJ found that Plaintiff did suffer from a mentally determinable mental impairment (mood disorder). The ALJ further determined that the impairment was severe. Thus, the key inquiry is the effect Plaintiff's impairment has with regard to the Subsection (B) criteria. Plaintiff will only be disabled if her impairment results in marked restrictions in at least two of the specified areas, sufficient to preclude her from performing basic work activities. See Armstrong v. Comm 'r of Social Sec., No. 05-CV-1285, 2008 WL 2224943, at * 12 (N.D.N.Y. May 27, 2008) (holding that even if the ALJ had determined that the plaintiff's depression was a medically determinable impairment, substantial evidence must exist to support a conclusion that the condition was severe and precluded the plaintiff from doing basic work activities).

9

The ALJ concluded that Plaintiff had "no restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation." (T at 17). For the reasons discussed below, this Court finds that the ALJ's determination was supported by substantial evidence.

### i.    Activities of Daily Living

There is no indication of any discernable limitation, let alone a marked limitation, with regard to Plaintiff's ability to perform activities of daily living. Plaintiff testified that she is raising her 12-year old daughter alone, is able to drive a car, and spends approximately six hours per day e-mailing friends and family and using the computer. (T at 234-35, 242-43). Plaintiff also indicated that she cares for her pets (including bathing and feeding them). (T at 56). According to Dr. Payne's report, Plaintiff is able to do "some cooking and cleaning," attend to laundry, and grocery shop when necessary. (T at 125). The State Agency review doctor opined that Plaintiff had no restrictions with respect to activities of daily living. (T at 147). All of this provides ample support for the ALJ's finding that Plaintiff had no restriction of activities of daily living.

### ii.    Social Functioning

"Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." Bergman v. Sullivan, CIV 88-513L, 1989 WL 280264, at * 4 (W.D.N.Y. Aug. 7, 1989). Davi Osgood, Plaintiff's treating social worker, opined that Plaintiff had "marked" limitations in terms of her ability to interact appropriately with the public, supervisors, and co-workers, (T at 169), a social worker's opinion is not

considered a "medical opinion". <u>See</u> <u>Diaz v. Shalala</u>, 59 F.3d 307, 313 (2d Cir.1995); <u>Corson v. Astrue</u>, 601 F. Supp.2d 515, 531-32 (W.D.N.Y. 2009).

The Social Security Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." <u>Diaz</u>, 59 F.3d at 313 (citing 20 C.F.R. § 404.1527(a)(2)). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions therapists or social workers.  Rather, therapists and social welfare agency personnell are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." <u>Id.</u> (citing 20 C.F.R. § 404.1513(e) (1994)).

Accordingly, because the Regulations do not classify therapists or social workers as either physicians or "other acceptable medical sources," the ALJ was not bound to give Osgood's opinion controlling weight. <u>See</u> <u>Velasquez v. Barnhart</u>, No. 03 Civ. 6448, 2004 WL 1752825, at *3 n. 49 (S.D.N.Y. Aug. 4, 2004)("The Regulations allow a lower level of consideration to be given to these 'other sources,' but 'under no circumstances can the regulations be read to require the ALJ to give controlling weight' to such sources.").

In this case, Osgood's assessment regarding Plaintiff's level of social functioning was contradicted by other evidence in the record.  Dr. Payne noted that, while Plaintiff had "difficulties relating with others," she was friends with one of her neighbors, had a "fairly good relationship" with her sister, and a good relationship with her daughter. (T at 125). Plaintiff testified that she e-mails and instant messages with family members for several hours a day. (T at 243).  As of the date of the hearing, Plaintiff testified that she had a boyfriend for five years and visits with a friend approximately once a week.  (T at 243-44).

11

A form completed by the Plaintiff indicated that she and her boyfriend were engaged to be married. (T at 57).

The State Agency review consultant found that Plaintiff was not significantly limited in terms of her ability to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavior extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (T at 134).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

In this case, this Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not have marked limitations with respect to social functioning.  Moreover, even assuming *arguendo* that Plaintiff has a marked limitation in terms of social functioning, she has not demonstrated a marked limitation in at least one of the other identified areas, which would be required to establish an impairment that meets or medically equals one of the Listings.

### iii.    Ability to Maintain Concentration, Persistence, or Pace

Davi Osgood opined that Plaintiff had only a mild limitation with respect to her ability to understand and remember simple and complex instructions.  Further, Osgood indicated that Plaintiff had "moderate," but not marked, limitations in terms of her ability to carry out simple instructions, make judgments on simple work-related decisions, carry out complex instructions, and make judgments on complex work-related decisions. (T at 168).

Dr. Payne found Plaintiff's attention, concentration, and memory skills to be "[m]ildly impaired." (T at 124).  She further concluded that Plaintiff could follow and understand simple directions and instructions and could consistently perform simple tasks.  (T at 125).  However, Dr. Payne noted "problems" with attention, concentration, maintaining a regular schedule, learning new tasks, performing complex tasks, and making appropriate decisions." (T at 125).  Overall, Dr. Payne described Plaintiff's psychiatric difficulties as "moderately limiting." (T at 125).

The State Agency review consultant concluded that Plaintiff had moderate difficulties with regard to maintaining concentration, persistence or pace. (T at 147).  In particular, the consultant found that Plaintiff was not significantly limited in terms of her ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T at 134).  The consultant determined that Plaintiff was moderately limited with respect to carrying out detailed instructions and maintaining attention and concentration for extended periods. (T

13

at 133).

In light of the foregoing, this Court finds that the ALJ's conclusion that Plaintiff did not have marked limitations in maintaining concentration, persistence or pace was supported by substantial evidence.

There do not appear to be any medically documented episodes of decompensation, so that factor is not at issue. Accordingly, the Court finds that the ALJ applied the appropriate legal standard and substantial evidence supports the ALJ's determination that Plaintiff's mental impairment does not meet or medically equal one of the impairments set forth in the Listings.

### b.   Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

The ALJ determined that Plaintiff's RFC was consistent with the mental ability to perform unskilled, sedentary work. (T at 18). "Unskilled sedentary work . . . involves . . . activities, classified as 'nonexertional,' such as capacities for seeing, manipulation, and

14

understanding, remembering, and carrying out simple instructions." SSR 96-9p.  The basic mental demands of such work include: "[u]nderstanding, remembering, and carrying out simple instructions; [m]aking judgments that are commensurate with the functions of unskilled work--*i.e.*, simple work-related decisions; [r]esponding appropriately to supervision, co- workers and usual work situations; [d]ealing with changes in a routine work setting." SSR 96-9p; <u>see</u> <u>also</u> SSR 85-15.

The medical record, as summarized above, provides substantial evidence in support of the ALJ's determination that Plaintiff retained the RFC to handle the mental demands of unskilled, sedentary work.

### c.    Obesity

It has been noted that "[o]besity is not in and of itself a disability; [h]owever, [it] may be considered severe-and thus medically equal to a listed disability--if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." <u>Cruz v. Barnhart</u>, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); <u>see</u> <u>also</u> SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each . . . considered separately.").

Plaintiff argues that the ALJ erred by failing to consider her obesity and its effect on her other physical impairments when determining whether she is disabled.  In support of

this argument, Plaintiff points to clinical notes indicating that Plaintiff weighs more than 280 pounds and is considered morbidly obese.  (T at 198-202).

However, the ALJ was required to consider only those impairments that Plaintiff claimed to have, or about which the ALJ received evidence. See Rutherford v. Barnhart, 399 F.3d 546, 552-553 (3d Cir.2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.2004)); see also 20 C.F.R. 404.1512(a).  When asked to identify the illnesses, injuries or conditions that allegedly limited her ability to perform work, Plaintiff did not reference obesity. (T at 45).  Plaintiff has not specified how consideration of her obesity should have affected the five-step analysis undertaken by the ALJ, beyond the bald assertion that the ALJ should have considered it.

Moreover, SSR 02-1p notwithstanding, "an ALJ is not obligated to single out a claimant's obesity for discussion in all cases." Yablonski v. Comm'r of Soc. Sec., 03-CV-414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008).  Rather, as " '[t]hose circuits which have recently commented on this complaint have held[,] . ..  an ALJ's failure to explicitly address a claimant's obesity does not warrant remand ." Id. "W]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions.'" Id.

The record makes clear that Plaintiff is obese. Although the ALJ did not expressly address Plaintiff's obesity, the ALJ considered the physical limitations set forth by the treating physicians taken in conjunction with that from the state agency consultant. As discussed below, the ALJ's RFC determination indicates that she considered Plaintiff's limitations. Accordingly, the ALJ's failure to specifically address her obesity does not warrant a remand. See Martin v. Astrue, 05-CV-72, 2008 WL 4186339, at *3-4 (N.D.N.Y.

Sept. 9, 2008).

### d.    Treating Medical Provider

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

Plaintiff argues that the ALJ erred in according little weight to the assessment of Plaintiff's treating medical provider, Amy Murray, a physician's assistant.  However, the treating physician rule does not apply to opinions rendered by non-physician medical

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

sources, *e.g.* physician's assistants, nurse practitioners. While the ALJ must at least consider the opinion of any professional who provides treatment to a claimant pursuant to Social Security Ruling 06-3p ("SSR 06-3p"), the ALJ is not obligated to give controlling weight to such opinions under the treating physician rule. Catanzaro v. Commissioner of Social Security, 08-CV-389A, 2009 WL 2342466, at *8 (W.D.N.Y. July 27, 2009).

Moreover, the ALJ's determination that Plaintiff retained the RFC to occasionally lift and carry up to ten pounds, walk/stand for up to two hours in an eight hour workday, sit up to six hours out of an eight hour workday, occasionally push/pull light objects, and occasionally bend and stoop was supported by substantial evidence. The clinical findings indicated minimal to mild facet joint disease in the lumbar area (T at 71-72, 219-20). Dr. Sharon Atkinson, a consultative examiner, indicated that Plaintiff had normal gait and station, and opined that she had only "mild to moderate" limitations with respect to "prolonged walking, standing, or carrying heaving objects." (T at 119, 121).

### IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and consultative examiners, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering the decision that Plaintiff is not disabled. The Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Court recommends that the

Commissioner be GRANTED judgment on the pleadings.

Respectfully submitted,

Dated:      September 28, 2009

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

September 28 , 2009

Victor E. Bianchini
United States Magistrate Judge